678 S.E.2d 1

Thomas D. SIMPSON, Appellant,

v.

WEST VIRGINIA OFFICE OF the
INSURANCE COMMISSIONER,

and

Independence Coal Company,
Inc., Appellees.

No. 34368.

Supreme Court of Appeals of
West Virginia.

Submitted April 8, 2009.

Decided April 30, 2009.

Gregory S. Prudich, Sanders, Austin, Flanigan & Aboulhosn, Princeton, WV, for Appellant.

Daniel G. Murdock, Associate Counsel, Offices of the Insurance Commissioner, Charleston, WV, for Appellee, West Virginia Office of the Insurance Commissioner.

Sean Harter, Charleston, WV, for Appellee, Independence Coal Company, Inc.

DAVIS, Justice:

The appellant herein, Thomas D. Simpson [hereinafter "Mr. Simpson"], appeals from an order entered January 23, 2007, by the Workers' Compensation Board of Review [hereinafter "the Board"]. By that order, the Board affirmed prior orders entered by the Workers' Compensation Commission [hereinafter "Commission"], which awarded Mr. Simpson a 13% permanent partial disability award [hereinafter "PPD"], and the Workers' Compensation Office of Judges [hereinafter "OOJ"], which upheld that award. Mr. Simpson argued below that he was entitled to a higher impairment rating and should have been awarded an additional percentage of PPD benefits. On appeal to this Court, Mr. Simpson contends that the Board erred by upholding his award of benefits calculated in accordance with W. Va. C.S.R. Table § 85–20–C (2004)[1] because, he claims, this Rule is unconstitutional because it violates the separation of powers doctrine. Upon a review of the parties' arguments, the record submitted for appellate consideration, and the pertinent authorities, we affirm the Board's order finding Mr. Simpson to be entitled to a 13% PPD award.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Before recounting the factual history of Mr. Simpson's work-related injury, a review of the relevant procedural history will assist in understanding the context of Mr. Simpson's arguments on appeal to this Court.

1. *See* note 3, *infra.*

2. The Legislature's 2005 amendments to W. Va. Code § 23–4–3b did not affect subsection (b). *Compare* W. Va.Code § 23–4–3b(b) (2003) (Spec. Supp. Aug. 2003) *with* W. Va.Code § 23–4–3b(b) (2005) (Repl. Vol. 2005). Because the 2005 amendments to W. Va.Code § 23–4–3b(b) be-

### A. *Procedural History*

The procedural history of this case begins in 2002 with this Court's prior decision in *Repass v. Workers' Compensation Division,* 212 W.Va. 86, 569 S.E.2d 162 (2002). In *Repass,* this Court rejected the use of the Diagnosis–Related Estimate Model for the evaluation of spine injury claims as invalid and unreliable. Specifically, we held, in Syllabus point 9 of *Repass,* that,

> [b]ecause the Diagnosis–Related Estimate Model for the examination of spine injury claims, as set forth in The American Medical Association's, *Guides to the Evaluation of Permanent Impairment, Fourth Edition* (1993), cannot be reconciled with several specific workers compensation statutes promulgated by the West Virginia Legislature, any medical examination conducted in accordance with that model is invalid and unreliable.

212 W.Va. 86, 569 S.E.2d 162.

In response to this Court's decision in *Repass,* the Legislature amended W. Va. Code § 23–4–3b in 2003 to add subsection (b). *See* W. Va.Code § 23–4–3b(b) (2003) (Spec. Supp. Aug. 2003). W. Va.Code § 23–4–3b(b) (2005)[2] (Repl. Vol. 2005) directs:

> In addition to the requirements of subsection (a) of this section, on or before the thirty-first day of December, two thousand three, the board of managers shall promulgate a rule establishing the process for the medical management of claims and awards of disability which includes, but is not limited to, reasonable and standardized guidelines and parameters for appropriate treatment, expected period of time to reach maximum medical improvement and range of permanent partial disability awards for common injuries and diseases or, in the alternative, which incorporates by reference the medical and disability management guidelines, plan or program being

came effective on January 29, 2005, and were in effect at the time that Dr. Orphanos evaluated Mr. Simpson on February 1, 2005, our references to W. Va.Code § 23–4–3b(b) will be to the 2005 version of this statute, except where otherwise noted. *See* note 3, *infra.*

utilized by the commission for the medical and disability management of claims, with the requirements, standards, parameters and limitations of such guidelines, plan or program having the same force and effect as the rule promulgated in compliance herewith.

Pursuant to W. Va.Code § 23–4–3b(b), the Workers' Compensation Board of Managers [hereinafter "Board of Managers"] repealed former W. Va.C.S.R. § 85–20–1, *et seq.*, and replaced it with an amended version of this Rule, the original filing of which was effective June 14, 2004.[3] The scope of this Rule is defined as follows:

> W. Va.Code § 23–4–3b(b) requires the Workers' Compensation Board of Managers to promulgate a rule establishing the process for the medical management of claims and awards of disability which includes, but is not limited to, reasonable and standardized guidelines and parameters for appropriate treatment, expected period of time to reach maximum medical improvement and range of permanent partial disability awards for common injuries and diseases or, in the alternative, which incorporates by reference the medical and disability management guidelines, plan or program being utilized by the commission, insurance commissioner, self-insured employer or private carrier, whichever is applicable, for the medical and disability management of claims, with the requirements, standards, parameters and limitations of such guidelines, plan or program having the same force and effect as the rule promulgated in compliance herewith. This Rule satisfies this statutory requirement.

W. Va.C.S.R. § 85–20–1.1 (2004) (citations omitted).

More specifically, W. Va.C.S.R. § 85–20–64.2 and Table § 85–20–C set forth the methodology for evaluating lumbar spine impairments, such as that sustained by Mr. Simpson in the case *sub judice.* W. Va. C.S.R. § 85–20–64.1 (2004) explains preliminarily that,

> [p]ursuant to W. Va.Code § 23–4–3b(b), the Commission or Insurance Commissioner, whichever is applicable, hereby adopts the following ranges of permanent partial disability for common injuries and diseases. Permanent partial disability assessments shall be determined based upon the range of motion models contained in the Guides Fourth.[4] Once an impairment

---

**3.** Pursuant to W. Va.C.S.R. § 85–20–65.2 (2006), "[t]hese revised rules are not applicable to any permanent impairment rating examination performed prior to the effective date of these revised rules...." The independent medical evaluation upon which the Commission based Mr. Simpson's award was performed by Dr. Orphanos on February 1, 2005, but the current version of W. Va.C.S.R. § 85–20–65.2 did not go into effect until January 20, 2006. Therefore, in accordance with W. Va.C.S.R. § 85–20–65.2 (2006), the previous version of W. Va.C.S.R. § 85–20–1, *et seq.*, which became effective on June 14, 2004, applies to the facts of this case as that was the Rule in effect at the time of Dr. Orphanos's evaluation of Mr. Simpson. However, it should be noted that the portions of W. Va.C.S.R. § 85–20–1, *et seq.*, that are relevant to the instant appeal have remained substantially unchanged between the previous version of this Rule, which was filed on May 14, 2004, and became effective on June 14, 2004, and the current version of this Rule, which was filed on December 20, 2005, and became effective on January 20, 2006.

**4.** "[T]he Guides Fourth" refers to the " 'Guides to the Evaluation of Permanent Impairment,' (4th ed. 1993), as published by the American Medical Association." W. Va.C.S.R. § 85–20–65.1 (2004). W. Va.C.S.R. § 85–20–65.1 provides generally for the "[a]doption of [s]tandards":

> Except as provided for in section 66 of this Rule, on and after the effective date of this rule all evaluations, examinations, reports, and opinions with regard to the degree of permanent whole body medical impairment which an injured worker has suffered shall be conducted and composed in accordance with the "Guides to the Evaluation of Permanent Impairment," (4th ed. 1993), as published by the American Medical Association. If in any particular claim, the examiner is of the opinion that the Guides or the section 64 substitutes cannot be appropriately applied or that an impairment guide established by a recognized medical specialty group may be more appropriately applied, then the examiner's report must document and explain the basis for that opinion. Deviations from the requirements of the Guides or the section 6[sic] substitutes shall not be the basis for excluding evidence from consideration. Rather, in any such instance such deviations shall be considered in determining the weight that will be given to that evidence. An example of an acceptable recog-

level has been determined by range of motion assessment, that level will be compared with the ranges set forth below. Permanent partial disability assessments in excess of the range provided in the appropriate category as identified by the rating physician shall be reduced to the [sic] within the ranges set forth below[.] (Footnote added).

With respect to lumbar spine impairments, in particular, W. Va.C.S.R. § 85–20–64.2 (2004) instructs that

[t]he range of motion methodology for assessing permanent impairment shall be used. However, a single injury or cumulative injuries that lead to a permanent impairment to the Lumbar Spine area of one's person shall cause an injured worker to be eligible to receive a permanent partial disability award within the ranges identified in Table § 85–20–C. The rating physician must identify the appropriate impairment category and then assign an impairment within the appropriate range designated for that category.

Additionally, W. Va.C.S.R. Table § 85–20–C (2004) establishes "PPD Ranges for Lumbar Spine Impairments" and defines the criteria to be used when rating a claimant's impairment attributable to a lumbar spine injury:

**Lumbar Category I**

**0% Impairment of the Whole Person**

No significant clinical findings, no observed muscle guarding or spasm, no documentable neurologic impairment, no documented alteration in structural integrity and no other indication of impairment related to injury or illness; no fractures[.]

**Lumbar Category II**

**5%–8% Impairment of the Whole Person**

Clinical history and examination findings are compatible with a specific injury; findings may include significant muscle guarding or spasm observed at the time of the examination, asymmetric loss of range of motion, or nonverifiable radicular complaints, defined as complaints of radicular pain without objective findings; no altera-

nized medical specialty group's own guides is the "Orthopedic Surgeons Manual in Evaluat-

tion of the structural integrity and no significant radiculopathy

or

individual had a clinically significant radiculopathy and has an imaging study that demonstrates a herniated disk at the level and on the side that would be expected based on the previous radiculopathy, but no longer has the radiculopathy following conservative treatment

or

fractures: (1) less than 25% compression of one vertebral body; (2) posterior element fracture without dislocation (not developmental spondylolysis) that has healed without alteration of motion segment integrity; (3) a spinous or transverse process fracture with displacement without a vertebral body fracture, which does not disrupt the spinal canal[.]

**Lumbar Category III**

**10%–13% Impairment of the Whole Person**

Significant signs of radiculopathy such as dermatormal [sic] pain and/or in a dermatomal distribution, sensory loss, loss of relevant reflex(es), loss of muscle strength or measured unilateral atrophy above or below the knee compared to measurements on the contralateral side at the same location; impairment may be verified by electrodiagnostic findings

or

history of a herniated disk at the level and on the side that would be expected from objective clinical findings, associated with radiculopathy, or individuals who had surgery for radiculopathy but are not asymptomatic

or

fractures: (1) 25% to 50% compression of one vertebral body; (2) posterior element fracture with displacement disrupting the spinal canal; in both cases, the fracture has healed without alteration of structural integrity[.]

**Lumbar Category IV**

ing Permanent Physical Impairment."

**20%–23% Impairment of the Whole Person**

Loss of motion segment integrity defined from flexion and extension radiographs as at least 4.5 mm of translation of one vertebra on another or angular motion greater than 15° at L1–2, L2–3 and L3–4, greater than 20° at L4–5, and greater than 25° at L5–S1 (Figure 15–3); may have complete or near complete loss of motion of a motion segment due to developmental fusion, or successful or unsuccessful attempt at surgical arthrodesis

or

fractures: (1) greater than 50% compression of one vertebral body without residual neurologic compromise[.]

**Lumbar Category V**

**25%–28% Impairment of the Whole Person**

Meets the criteria of DRE lumbosacral categories III and IV; that is, both radiculopathy and alteration of motion segment integrity are present; significant lower extremity impairment is present as indicated by atrophy or loss of reflex(es), pain and/or sensory changes within an anatomic distribution (Dermetomal), or electromyographic findings as stated in lumbosacral category III and alteration of spine motion segment integrity as defined in lumosacral [sic] category IV

or

fractures: (1) greater than 50% compression of one vertebral body with unilateral neurologic compromise[.]

Mr. Simpson's 13% PPD award was calculated in accordance with this Table, and it is this portion of Rule § 85–20–1, *et seq.*, which Mr. Simpson claims is unconstitutional.

### B. Factual History

On September 25, 2002, Mr. Simpson was injured in the course of and as a result of his employment with Independence Coal Company, Inc.,[5] in Madison, West Virginia. Mr. Simpson was employed as a truck driver and was injured while he was climbing out of his truck: he slipped and fell off of the truck's last step, which was approximately three feet off of the ground, landing on his back. Following treatment at a local hospital, Mr. Simpson was diagnosed as having sustained a lumbosacral strain. For the next two and one-half years, Mr. Simpson underwent treatment for his lumbar injury, including disc surgery in December 2002. Mr. Simpson's treatment culminated in the insertion of a spinal cord stimulator, in May 2004, in an attempt to alleviate his residual pain.[6] Since the date of his injury, Mr. Simpson has not been able to return to work.

The Workers' Compensation Commission referred Mr. Simpson to Dr. George Orphanos, an orthopedic surgeon, who conducted an independent medical evaluation on February 1, 2005. Dr. Orphanos concluded that

[t]he patient [Mr. Simpson] has an impairment and the AMA Guides, 4th Edition was followed along with Rule 20, Section 7. According to table 85–20–C the patient falls in the lumbar category 3 which will allow 10 to 13% of impairment for the whole person. Concerning range of motion of the lumbar spine as per AMA Guides, 4th Edition, table 81, page 128 for hip flexion angle 10 degrees and true lumbar flexion 10 degrees a 10% of impairment is recommended. For true lumbar extension 10 degrees, 5% is recommended. For lateral bending to the right 15 degrees, 2% and to the left 10 degrees 3%. The range of motion impairment will sum up to 20%. The range of motion impairment does not fall within the accepted ranges for this category, therefore, the impairment has been adjusted to 13% pursuant to Rule 20, Section 7. In addition to the above I would like to recommend a 2%

---

**5.** On his initial "Report of Occupational Injury," Mr. Simpson listed his employer as "Endurance Mining." However, subsequent documents in the record of this case, as well as the appearance of the employer before this Court, refer to Mr. Simpson's employer as "Independence Coal Company, Inc." Therefore, to maintain consistency with the orders appealed from and with the briefs filed in this Court, references in this opinion to Mr. Simpson's employer will be to "Independence Coal Company, Inc."

**6.** No further surgeries have been recommended, and Mr. Simpson has not benefitted from physical therapy.

of impairment for the last surgical procedure concerning spinal cord stimulator and additional scars. This will bring his impairment to 15% as estimated at this time concerning this claim.

Based upon Dr. Orphanos's evaluation of Mr. Simpson, the Commission, by order dated March 24, 2005, granted Mr. Simpson a 13% PPD award. The Commission explained that

> [m]edical evidence has been received from Dr. Orphanos, dated 02/01/2005, that indicates that you have a 13% permanent partial disability. You are being granted this award for permanent impairment resulting from your injury.
>
> . . . .
>
> Based upon the IME physician findings, the claimant is classified under the Lumbar, Category III of Table 85–20–C.

From this order, Mr. Simpson appealed to the Workers' Compensation Office of Judges contending that he should be awarded the additional 2% PPD recommended by Dr. Orphanos for the insertion of the spinal cord stimulator and resultant scarring. In a decision issued on June 22, 2006, the OOJ affirmed the Commission's order. Rejecting Mr. Simpson's contentions, the OOJ observed that

> Dr. Orphanos, who recommended 2% additional from the AMA Guides, instead of basing his entire rating upon Rule 20, was not proper. It is found that Dr. Orphanos was, in fact, restricted to the Rule 20 impairment ratings for a lumbar Category III injury. Therefore, it is found that the Commission was correct in granting the claimant 13% based upon Rule 20.

Mr. Simpson then appealed to the Workers' Compensation Board of Review. By order entered January 23, 2007, the Board affirmed the OOJ's decision affirming Mr. Simpson's 13% PPD award. From these adverse rulings, Mr. Simpson now appeals to this Court.

## II.

## STANDARD OF REVIEW

On appeal to this Court, Mr. Simpson assigns error to the Board's decision to affirm his 13% PPD award, calculated pursuant to W. Va.C.S.R. Table § 85–20–C, because, he claims, W. Va.C.S.R. Table § 85–20–C is unconstitutional. When this Court grants an appeal from the Workers' Compensation Board of Review, our review of the Board's final order is guided by W. Va.Code § 23–5–15 (2005) (Repl. Vol. 2005), which directs that,

> (b) [i]n reviewing a decision of the board of review, the supreme court of appeals shall consider the record provided by the board and give deference to the board's findings, reasoning and conclusions[.]
>
> (c) If the decision of the board represents an affirmation of a prior ruling by both the commission and the office of judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the supreme court of appeals only if the decision is in clear violation of constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo re-weighing of the evidentiary record. If the court reverses or modifies a decision of the board pursuant to this subsection, it shall state with specificity the basis for the reversal or modification and the manner in which the decision of the board clearly violated constitutional or statutory provisions, resulted from erroneous conclusions of law, or was based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record.

W. Va.Code §§ 23–5–15(b–c).

■ The specific issue Mr. Simpson raises in this appeal concerns the constitutionality of a legislative rule. We have held that "[t]he constitutionality of a statute is a question of law which this Court reviews *de novo*." Syl. pt. 1, *State v. Rutherford,* 223 W.Va. 1, 672 S.E.2d 137 (2008). Similarly, we have recognized that, "[b]ecause interpretations of the West Virginia Constitution, along with interpretations of statutes and

rules, are primarily questions of law, we apply a *de novo* review[.]" *Phillip Leon M. v. Greenbrier County Bd. of Educ.*, 199 W.Va. 400, 404, 484 S.E.2d 909, 913 (1996), *modified on other grounds, Cathe A. v. Doddridge County Bd. of Educ.*, 200 W.Va. 521, 490 S.E.2d 340 (1997). *Accord* Syl. pt. 1, *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W.Va. 573, 466 S.E.2d 424 (1995) ("Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review."). Thus, our review of the constitutionality of W. Va.C.S.R. Table § 85–20–C will be *de novo*.

We will proceed to consider the parties' arguments in light of these standards.

## III.

## DISCUSSION

 In his appeal to this Court, Mr. Simpson raises, for the first time, the issue asserted in this case, *i.e.* whether the Legislature has violated the separation of powers by authorizing, in W. Va.Code § 23–4–3b(b), the adoption of a rule to standardize guidelines for the evaluation of permanent impairments, specifically W. Va.C.S.R. Table § 85–20–C, which establishes impairment ratings for lumbar spine injuries. Having reviewed the record in this case, it does not appear that Mr. Simpson has previously contested the constitutionality of W. Va.C.S.R. Table § 85–20–C during the course of his claim for workers' compensation benefits arising from his September 25, 2002, work-related injury. Nevertheless, we may consider this constitutional issue for the first time on appeal because it is central to our resolution of this case. In this regard, we have held that "[a] constitutional issue that was not properly preserved at the trial court level may, in the discretion of this Court, be addressed on appeal when the constitutional issue is the controlling issue in the resolution of the case." Syl. pt. 2, *Louk v. Cormier*, 218 W.Va. 81, 622 S.E.2d 788 (2005). Having determined that we may properly consider the issue herein raised, we next turn to the arguments of the parties in this regard.

Mr. Simpson argues that the Legislature's delegation of rule-making authority to promulgate workers' compensation rules that are exempt from legislative oversight unconstitutionally violates the separation of powers doctrine. In support of his argument, Mr. Simpson states that workers' compensation, and a worker's entitlement to and receipt of benefits thereunder, is a creature of statute and is solely within the province of the Legislature. *Citing* W. Va.Code § 23–1–1, *et seq.* Further, because workers' compensation is a statutory creation, Mr. Simpson contends that the authority to promulgate workers' compensation rules is exclusively within the province of the Legislature and is nondelegable. Moreover, Mr. Simpson asserts that, even if the Legislature could permissibly delegate the authority to promulgate workers' compensation rules, such rules should be subject to legislative oversight in accordance with the Administrative Procedures Act. *Citing* W. Va.Code § 29A–1–1, *et seq.* Because W. Va.C.S.R. § 85–20–1, *et seq.*, is exempt from legislative review and approval, Mr. Simpson complains that this Rule constitutes an improper delegation of the Legislature's authority over workers' compensation in violation of the separation of powers by effectively granting and/or denying workers' compensation benefits to injured workers.

The West Virginia Office of the Insurance Commissioner [hereinafter "WVOIC"], one of the appellees herein, responds that the Legislature did not violate the separation of powers by delegating the authority to promulgate W. Va.C.S.R. § 85–20–1, *et seq.* First, the WVOIC argues that the Legislature may permissibly delegate its rule-making authority provided (1) the agency to which such authority has been delegated does not exceed the authority granted to it by the enabling statute and (2) the delegated power is not a purely legislative power. In this regard, the WVOIC states that, in promulgating W. Va. C.S.R. § 85–20–1, *et seq.*, the Board of Managers complied with the legislative intent expressed in W. Va.Code § 23–4–3b(b) (2005) (Repl. Vol. 2005). Furthermore, asserts the WVOIC, the authority to promulgate the workers' compensation Rule at issue herein was not a purely legislative power insofar as W. Va.C.S.R. § 85–20–1, *et seq.*, does not

create or eliminate a class of workers' compensation benefits, but rather, merely defines the extent of such benefits previously created by the Legislature. The WVOIC additionally contends that the Administrative Procedures Act, itself, recognizes that the Legislature may exempt rules from the Act's legislative oversight process and that the Legislature has specifically exempted Rules promulgated by the Board of Managers from the Act. *Citing* W. Va.Code § 29A–1–3(d) (1990) (Repl. Vol. 2002); W. Va.Code § 23–1–1a(j)(3) (2005) (Repl. Vol. 2005).

Independence Coal Company, Inc. [hereinafter "Independence Coal"], Mr. Simpson's employer and another of the appellees herein, also rejects Mr. Simpson's arguments and asserts that W. Va.C.S.R. Table § 85–20–C is constitutional.

■ The separation of powers doctrine ensures that the three branches of government are distinct unto themselves and that they, exclusively, exercise the rights and responsibilities reserved unto them. Specifically, the separation of powers clause of the West Virginia Constitution directs that

> [t]he legislative, executive and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others; nor shall any person exercise the powers of more than one of them at the same time, except that justices of the peace shall be eligible to the legislature.

W. Va. Const. art. V, § 1. We have construed this provision as meaning that "Article V, section 1 of the Constitution of West Virginia which prohibits any one department of our state government from exercising the powers of the others, is not merely a suggestion; it is part of the fundamental law of our State and, as such, it must be strictly construed and closely followed." Syl. pt. 1, *State ex rel. Barker v. Manchin,* 167 W.Va. 155, 279 S.E.2d 622 (1981). *Accord* Syl. pt. 1, *State v. Buchanan,* 24 W.Va. 362 (1884) ("The legislative, executive and judicial departments of the government must be kept separate and distinct, and each in its legitimate sphere must be protected."). *See also State ex rel. State Bldg. Comm'n v. Bailey,* 151 W.Va. 79, 89, 150 S.E.2d 449, 455 (1966) (" 'The legisla-

tive, executive and judicial powers, under the Constitution, are each in its own sphere of duty, independent of and exclusive of the other[.]' " (quoting *Danielley v. City of Princeton,* 113 W.Va. 252, 255, 167 S.E. 620, 622 (1933))); *Bailey,* 151 W.Va. at 88, 150 S.E.2d at 454–55 (" 'The separation of these powers; the independence of the one from the other; the requirement that one department shall not exercise or encroach upon the powers of the other two, is fundamental in our system of Government, State and Federal. Each acts, and is intended to act, as a check upon the others, and thus a balanced system is maintained.' " (quoting *State v. Huber,* 129 W.Va. 198, 209, 40 S.E.2d 11, 18 (1946))).

■ Even though the power to make rules is vested with the legislative branch, the Legislature nevertheless may delegate its rule-making authority to an administrative body. Simply stated, "[t]he delegation by the legislature of broad discretionary powers to an administrative body, accompanied by fitting standards for their exercise, is not of itself unconstitutional." Syl. pt. 1, *State ex rel. West Virginia Hous. Dev. Fund v. Copenhaver,* 153 W.Va. 636, 171 S.E.2d 545 (1969). *Accord* Syl. pt. 3, *West Virginia Cemetery & Funeral Ass'n v. West Virginia Pub. Serv. Comm'n,* 216 W.Va. 431, 607 S.E.2d 537 (2004) (per curiam). Such delegation is proper when it is necessary to promulgate rules in accordance with a statute enacted by the Legislature. "Legislative power may be constitutionally delegated to an administrative agency to promulgate rules and regulations necessary and proper for the enforcement of a statute. W. Va. Const. art. VI, § 1; art. V, § 1." Syl. pt. 3, *State ex rel. Callaghan v. West Virginia Civil Serv. Comm'n,* 166 W.Va. 117, 273 S.E.2d 72 (1980).

■ When the Legislature delegates rule-making authority to an administrative agency, the scope of the agency's rule-making authority must be defined by the Legislature.

> "As a general rule the Legislature, in delegating discretionary power to an administrative agency, such as a board or a

commission, must prescribe adequate standards expressed in the statute or inherent in its subject matter and such standards must be sufficient to guide such agency in the exercise of the power conferred upon it." Syl. Pt. 3, *Quesenberry v. Estep*, 142 W.Va. 426, 95 S.E.2d 832 (1956).

Syl. pt. 4, *State ex rel. West Virginia Citizens Action Group v. West Virginia Econ. Dev. Grant Comm.*, 213 W.Va. 255, 580 S.E.2d 869 (2003). When exercising such rule-making authority, the agency is constrained to exercise its authority consistently with the intention expressed by the Legislature in the enabling statute.

It is fundamental law that the Legislature may delegate to an administrative agency the power to make rules and regulations to implement the statute under which the agency functions. In exercising that power, however, an administrative agency may not issue a regulation which is inconsistent with, or which alters or limits its statutory authority.

Syl. pt. 3, *Rowe v. West Virginia Dep't of Corrs.*, 170 W.Va. 230, 292 S.E.2d 650 (1982). Likewise,

[a]ny rules or regulations drafted by an agency must faithfully reflect the intention of the Legislature, as expressed in the controlling legislation. Where a statute contains clear and unambiguous language, an agency's rules or regulations must give that language the same clear and unambiguous force and effect that the language commands in the statute.

Syl. pt. 4, *Maikotter v. University of West Virginia Bd. of Trs./West Virginia Univ.*, 206 W.Va. 691, 527 S.E.2d 802 (1999). With specific respect to rules directed to be made to implement workers' compensation statutes we have held that

[a] rule promulgated by the Workers' Compensation Division that mandates the use of a nonlegislatively created guide for the examination of certain injuries is valid only to the extent that the mandated guide does not conflict with the specific dictates of the Legislature as expressed by statute. Those aspects of the mandated guide that are in conflict are invalid.

Syl. pt. 8, *Repass v. Workers' Comp. Div.*, 212 W.Va. 86, 569 S.E.2d 162 (2002).

Applying these authorities to the case *sub judice*, we must determine (1) whether the Legislature violated the separation of powers by delegating rule-making authority to the Workers' Compensation Board of Managers and (2) whether the Board of Managers's adoption of W. Va.C.S.R. Table § 85–20–C was a proper exercise of such rule-making authority.

**1. The Legislature did not violate the separation of powers by delegating rule-making authority to the Workers' Compensation Board of Managers.** As explained previously in Section I of this opinion, the Legislature enacted subsection (b) of W. Va.Code § 23–4–3b in response to this Court's decision in *Repass* that invalidated the DRE method of evaluating claims for work-related spine injuries. The full text of subsection (b) states:

In addition to the requirements of subsection (a) of this section, on or before the thirty-first day of December, two thousand three, the board of managers shall promulgate a rule establishing the process for the medical management of claims and awards of disability which includes, but is not limited to, reasonable and standardized guidelines and parameters for appropriate treatment, expected period of time to reach maximum medical improvement and range of permanent partial disability awards for common injuries and diseases or, in the alternative, which incorporates by reference the medical and disability management guidelines, plan or program being utilized by the commission for the medical and disability management of claims, with the requirements, standards, parameters and limitations of such guidelines, plan or program having the same force and effect as the rule promulgated in compliance herewith.

Mr. Simpson suggests, however, that W. Va.Code § 23–4–3b(b) is unconstitutional because it delegates rule-making authority in an area that is historically statutory, *i.e.*, workers' compensation, to the Board of Managers. "[T]his Court has consistently recognized that the powers of the legislature in its

field are almost plenary and that this Court will not declare an act of the legislature to be unconstitutional unless in that respect the invalidity of the act appears beyond reasonable doubt." *Hedrick v. County Court of Raleigh County,* 153 W.Va. 660, 668, 172 S.E.2d 312, 316 (1970) (citation omitted). *Accord* Syl. pt. 3, *Willis v. O'Brien,* 151 W.Va. 628, 153 S.E.2d 178 (1967) ("When the constitutionality of a statute is questioned every reasonable construction of the statute must be resorted to by a court in order to sustain constitutionality, and any doubt must be resolved in favor of the constitutionality of the legislative enactment."); Syl. pt. 1, *State ex rel. Appalachian Power Co. v. Gainer,* 149 W.Va. 740, 143 S.E.2d 351 (1965) ("In considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches. Every reasonable construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt.").

Here, the Legislature has enacted a statute in a field within its legislative domain: workers' compensation. "The right to workmen's compensation benefits is wholly statutory." Syl. pt. 2, in part, *Dunlap v. State Comp. Dir.,* 149 W.Va. 266, 140 S.E.2d 448 (1965). *Accord* Syl. pt. 1, in part, *Bounds v. State Workmen's Comp. Comm'r,* 153 W.Va. 670, 172 S.E.2d 379 (1970) ("The right to workmen's compensation benefits is created wholly by statute."). Therefore, W. Va.Code § 23–4–3b(b) may be declared unconstitutional only if "the invalidity of the act appears beyond reasonable doubt." *Hedrick v. County Court of Raleigh County,* 153 W.Va. at 668, 172 S.E.2d at 316 (citation omitted).

The Legislature's delegation of rule-making authority to the Board of Managers in W.

Va.Code § 23–4–3b(b) is not, in itself, unconstitutional. As we noted previously, "[t]he delegation by the legislature of broad discretionary powers to an administrative body, accompanied by fitting standards for their exercise, is not of itself unconstitutional." Syl. pt. 1, *State ex rel. West Virginia Hous. Dev. Fund v. Copenhaver,* 153 W.Va. 636, 171 S.E.2d 545. Moreover, "[l]egislative power may be constitutionally delegated to an administrative agency to promulgate rules and regulations necessary and proper for the enforcement of a statute. W. Va. Const. art. VI, § 1; art. V, § 1." Syl. pt. 3, *State ex rel. Callaghan v. West Virginia Civil Serv. Comm'n,* 166 W.Va. 117, 273 S.E.2d 72. Authorizing "an administrative agency to promulgate rules ... necessary and proper for the enforcement of a statute," *id.,* is precisely what the Legislature sought to accomplish through W. Va.Code § 23–4–3b(b). In this subsection, the Legislature specifically declared its intention to delegate rule-making authority to the Board of Managers for the express purpose of "promulgat[ing] a rule establishing the process for the medical management of claims and awards of disability[.]" W. Va.Code § 23–4–3b(b). Such delegation of rule-making authority to the Board of Managers was proper and within the purview of the Legislature's exercise of its legislative power. Because the Legislature acted "within constitutional limits," Syl. pt. 1, in part, *State ex rel. Appalachian Power Co. v. Gainer,* 149 W.Va. 740, 143 S.E.2d 351, in enacting W. Va.Code § 23–4–3b(b), we find this statute is not an unconstitutional violation of the separation of powers doctrine. Accordingly, we hold that W. Va.Code § 23–4–3b(b) (2005) (Repl. Vol. 2005), which directs the Workers' Compensation Board of Managers to "promulgate a rule establishing the process for the medical management of claims and awards of disability," is constitutional and does not violate the separation of powers.

**2. The promulgation of W. Va. C.S.R. Table § 85–20–C by the Workers' Compensation Board of Managers was a proper exercise of the rule-making authority delegated to it by the Legislature in W. Va.Code § 23–4–3b(b).** Pursuant to the Legislature's directive in W. Va.Code § 23–

4–3b(b), the Board of Managers promulgated "a rule establishing the process for the medical management of claims and awards of disability": W. Va.C.S.R. § 85–20–1, *et seq.* In the first section of this Rule, which defines its scope, the Board of Managers clearly indicates that its authority to do so is derived from the Legislature's grant of power thereto in W. Va.Code § 23–4–3b(b):

> W. Va.Code § 23–4–3b(b) requires the Workers' Compensation Board of Managers to promulgate a rule establishing the process for the medical management of claims and awards of disability which includes, but is not limited to, reasonable and standardized guidelines and parameters for appropriate treatment, expected period of time to reach maximum medical improvement and range of permanent partial disability awards for common injuries and diseases or, in the alternative, which incorporates by reference the medical and disability management guidelines, plan or program being utilized by the commission, insurance commissioner, self-insured employer or private carrier, whichever is applicable, for the medical and disability management of claims, with the requirements, standards, parameters and limitations of such guidelines, plan or program having the same force and effect as the rule promulgated in compliance herewith. This Rule satisfies this statutory requirement.

W. Va.C.S.R. § 85–20–1.1 (2004)[7] (citations omitted). Moreover, the Board of Managers expressly states that "[t]he purpose of this rule is to implement the provisions of W. Va.Code Section 23–4–3b(b) . . . ." W. Va. C.S.R. § 85–20–2.1 (2004).

Within the Rule adopted pursuant to W. Va.Code § 23–4–3b(b) is the specific provision at issue in the instant appeal: W. Va. C.S.R. Table § 85–20–C. W. Va.C.S.R. § 85–20–64.2 (2004) introduces Table § 85–20–C by explaining that, with respect to lumbar spine impairments,

> [t]he range of motion methodology for assessing permanent impairment shall be

used. However, a single injury or cumulative injuries that lead to a permanent impairment to the Lumbar Spine area of one's person shall cause an injured worker to be eligible to receive a permanent partial disability award within the ranges identified in Table § 85–20–C. The rating physician must identify the appropriate impairment category and then assign an impairment within the appropriate range designated for that category.

Table § 85–20–C establishes the aforementioned PPD ranges for lumbar spine impairments by defining "[c]riteria for [r]ating [i]mpairment [d]ue to [l]umbar [s]pine [i]njury." Mr. Simpson has been granted a 13% PPD award for his work-related lumbar injury, which has been classified a Category III Lumbar Spine Injury:

**Lumbar Category III**

**10%–13% Impairment of the Whole Person**

Significant signs of radiculopathy such as dermatormal [sic] pain and/or in a dermatomal distribution, sensory loss, loss of relevant reflex(es), loss of muscle strength or measured unilateral atrophy above or below the knee compared to measurements on the contralateral side at the same location; impairment may be verified by electrodiagnostic findings

**or**

history of a herniated disk at the level and on the side that would be expected from objective clinical findings, associated with radiculopathy, or individuals who had surgery for radiculopathy but are not asymptomatic

**or**

fractures: (1) 25% to 50% compression of one vertebral body; (2) posterior element fracture with displacement disrupting the spinal canal; in both cases, the fracture has healed without alteration of structural integrity[.][8]

(Footnote added).

■ Mr. Simpson argues, though, that W. Va.C.S.R. Table § 85–20–C is an improper

---

7. *See* note 3, *supra.*

8. For the criteria pertaining to the remaining lumbar spine impairment categories, see Section I, *supra.*

Rule because it was not subject to legislative oversight and because the Legislature did not provide specific guidelines for the Board of Managers's promulgation of such Rule. This Court generally accords deference to rules properly promulgated by an administrative agency so long as such rules accord with the intent of the enabling statute pursuant to which they were promulgated. In other words, "procedures and rules properly promulgated by an administrative agency with authority to enforce a law will be upheld so long as they are reasonable and do not enlarge, amend or repeal substantive rights created by statute." Syl. pt. 4, *State ex rel. Callaghan v. West Virginia Civil Serv. Comm'n*, 166 W.Va. 117, 273 S.E.2d 72.

▮ When determining a rule's validity, the first step is to determine whether the rule in question is interpretive or legislative.

In reviewing a rule or regulation of an administrative agency, a West Virginia court must first decide whether the rule is interpretive[9] or legislative[10]. If it is interpretive, a reviewing court is to give it only the deference it commands. If it is a legislative rule, the court first must determine its validity. Assuming its validity, the two-pronged analysis from *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), should be applied.

9. W. Va.Code § 29A–1–2(c) (1982) (Repl.Vol. 2002) defines an " '[i]nterpretive rule' " as

every rule, as defined in subsection (i) of this section, adopted by an agency independently of any delegation of legislative power which is intended by the agency to provide information or guidance to the public regarding the agency's interpretations, policy or opinions upon the law enforced or administered by it and which is not intended by the agency to be determinative of any issue affecting private rights, privileges or interests....

10. The definition of a " '[l]egislative rule' " is set forth in W. Va.Code § 29A–1–2(d) (1982) (Repl. Vol. 2002):

every rule, as defined in subsection (i) of this section, proposed or promulgated by an agency pursuant to this chapter. Legislative rule includes every rule which, when promulgated after or pursuant to authorization of the legislature, has (1) the force of law, or (2) supplies a basis for the imposition of civil or criminal liability, or (3) grants or denies a specific benefit. Every rule which, when effective, is deter-

Syl. pt. 2, *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W.Va. 573, 466 S.E.2d 424 (1995) (footnotes added). The rule at issue in this case, W. Va.C.S.R. § 85–20–1, *et seq.*, of which Table § 85–20–C is a part, is clearly a legislative rule: the Board of Managers expressly identifies W. Va. C.S.R. § 85–20–1, *et seq.*, as an "exempt legislative rule"[11] and the effect of the Rule is to "grant[ ] or den[y] a specific benefit,"[12] *i.e.*, workers' compensation benefits.

▮ Next, once a rule has been determined to be a legislative rule, its validity must be determined. Syl. pt. 2, in part, *Appalachian Power Co.*, 195 W.Va. 573, 466 S.E.2d 424. In Syllabus point 1, in part, of *Chico Dairy Co., Store No. 22 v. West Virginia Human Rights Commission*, 181 W.Va. 238, 382 S.E.2d 75 (1989), we held that a rule promulgated by the West Virginia Human Rights Commission was not valid because "[t]hat rule is a 'legislative rule' under *W. Va.Code*, 29A–1–2(d), as amended, but was not submitted to the legislative rule-making review committee for its approval, as required by *W. Va.Code*, 29A–3–9 to 29A–3–14, as amended."[13] A legislative rule may also be valid, though, if it is promulgated as an exempt legislative rule in accordance with W. Va.Code § 29A–1–3(d) (1990) (Repl. Vol. 2002), which provides that

minative on any issue affecting private rights, privileges or interests is a legislative rule....

11. W. Va.C.S.R. § 85–20–1.5.

12. W. Va.Code § 29A–1–2(d)(3).

13. We also have recognized the validity of a legislative rule if said rule does not violate the one-object rule of article VI, section 30 of the West Virginia Constitution. *See* Syl. pt. 2, *Kincaid v. Mangum*, 189 W.Va. 404, 432 S.E.2d 74 (1993) ("If there is a reasonable basis for the grouping of various matters in a legislative bill, and if the grouping will not lead to logrolling or other deceiving tactics, then the one-object rule in *W. Va. Const.* art. VI, § 30 is not violated; however, the use of an omnibus bill to authorize legislative rules violates the one-object rule found in *W. Va. Const.* art. VI, § 30 because the use of the omnibus bill to authorize legislative rules can lead to logrolling or other deceiving tactics."). None of the parties herein contend that W. Va. C.S.R. § 85–20–1, *et seq.*, was impermissibly adopted through omnibus legislation.

[n]othing herein shall be construed to affect, limit or expand any express and specific exemption from this chapter contained in any other statute relating to a specific agency, but such exemptions shall be construed and applied in accordance with the provisions of this chapter to effectuate any limitations on such exemptions contained in any such other statute.

Therefore, we hold that a legislative rule is valid if (1) it is submitted to the legislative rule-making review committee for approval, as required by W. Va.Code § 29A–3–9, *et seq.*, or (2) the Legislature expressly exempts it from such legislative rule-making review and approval pursuant to W. Va.Code § 29A–1–3(d) (1990) (Repl. Vol. 2002).

With respect to the Rule at issue herein, the Legislature specifically has exempted all rules promulgated by the Board of Managers from the legislative rule-making review and approval requirements:

The board of managers shall:

. . . .

Review and approve, reject or modify rules that are proposed by the executive director for operation of the workers' compensation system before the rules are filed with the secretary of state. *The rules adopted by the board are not subject to sections nine [§ 29A–3–9] through sixteen [§ 29A–3–16], inclusive, article three, chapter twenty-nine-a of this code.* The board shall follow the remaining provisions of said chapter for giving notice to the public of its actions and for holding hearings and receiving public comments on the rules[.]

W. Va.Code § 23–1–1a(j)(3) (2005) (Repl. Vol. 2005) (emphasis added). Thus, even though W. Va.C.S.R. § 85–20–1, *et seq.*, was not reviewed and approved through the legislative rule-making process, it was not required to be so approved because the Legislature specifically exempted it from such requirements. Therefore, W. Va.C.S.R. § 85–20–1, *et seq.*, is a valid legislative rule.

▆▆▆▆▆ Once a legislative rule has been determined to be valid, we must then consider whether such rule complies with the legislative intent declared in the statute enabling its promulgation.

Judicial review of an agency's legislative rule and the construction of a statute that it administers involves two separate but interrelated questions, only the second of which furnishes an occasion for deference. In deciding whether an administrative agency's · position should be sustained, a reviewing court applies the standards set out by the United States Supreme Court in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The court first must ask whether the Legislature has directly spoken to the precise question at issue. If the intention of the Legislature is clear, that is the end of the matter, and the agency's position only can be upheld if it conforms to the Legislature's intent. No deference is due the agency's interpretation at this stage.

Syl. pt. 3, *Appalachian Power Co. v. State Tax Dep't of West Virginia,* 195 W.Va. 573, 466 S.E.2d 424. By contrast,

[i]f legislative intent is not clear, a reviewing court may not simply impose its own construction of the statute in reviewing a legislative rule. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute. A valid legislative rule is entitled to substantial deference by the reviewing court. As a properly promulgated legislative rule, the rule can be ignored only if the agency has exceeded its constitutional or statutory authority or is arbitrary or capricious. W. Va.Code, 29A–4–2 (1982).

Syl. pt. 4, *Appalachian Power Co.,* 195 W.Va. 573, 466 S.E.2d 424. Whether the legislative intent is clearly expressed or must be ascertained,

" 'Rules and Regulations of ... [an agency] must faithfully reflect the intention of the legislature; when there is clear and unambiguous language in a statute, that language must be given the same clear and unambiguous force and effect in the [agency's] Rules and Regulations that it has in the statute.' Syl. pt. 4, *Ranger Fuel Corp. v. West Virginia Human*

*Rights Commission,* 180 W.Va. 260, 376 S.E.2d 154 (1988)." Syl. pt. 2, in part, *Chico Dairy Company v. Human Rights Commission,* 181 W.Va. 238, 382 S.E.2d 75 (1989).

Syl. pt. 5, *Appalachian Power Co.,* 195 W.Va. 573, 466 S.E.2d 424.

As noted above, the Legislature clearly declared its intent in W. Va.Code § 23–4–3b(b) to authorize the Board of Managers "to promulgate a rule establishing the process for the medical management of claims and awards of disability." The statement of legislative intent being plain, we must next consider whether the Board of Managers faithfully complied with such intent in promulgating the specific provision at issue in this case, W. Va.C.S.R. Table § 85–20–C.[14]

Table § 85–20–C enumerates "[c]riteria for [r]ating [i]mpairment [d]ue to [l]umbar [s]pine [i]njury," assigning impairment ratings to be used in calculating the amount of a claimant's PPD award for a work-related lumbar spine injury. In its directive to the Board of Managers "to promulgate a rule establishing the process for ... awards of disability," the Legislature further specified that such rule should "include[ ] ... [a] range of permanent partial disability awards for common injuries." W. Va.Code § 23–4–3b(b). The title of Table § 85–20–C is "PPD Ranges for Lumbar Spine Impairments," and the Table, itself, proceeds to define ranges of PPD awards for lumbar spine injuries. In promulgating Table § 85–20–C, the Board of Managers adhered to the stated legislative intent expressed in the enabling statute, W. Va.Code § 23–4–3b(b), and adopted guidelines for the rating of permanent partial disability awards as the Legislature had instructed it to do. The Board of Managers's promulgation of Table § 85–20–C directly complied with the Legislature's express statement of intent contained in W. Va.Code § 23–4–3b(b), and the language employed in Table § 85–20–C specifically reiterates such legislative intent in effectuating its purpose. Thus, Table § 85–20–C comports with the express intent of the Legislature and is not inconsistent therewith. *See* Syl. pts. 3 & 5, *Appalachian Power Co. v. State Tax Dep't of West Virginia,* 195 W.Va. 573, 466 S.E.2d 424. Accordingly, we hold that W. Va.C.S.R. Table § 85–20–C (2004) is valid and is a proper exercise of the rule-making authority delegated to the Workers' Compensation Board of Managers by the Legislature in W. Va.Code § 23–4–3b(b) (2005) (Repl. Vol. 2005). Having determined that W. Va.C.S.R. Table § 85–20–C is a valid and proper legislative rule, we affirm the Board's order upholding Mr. Simpson's 13% PPD award calculated in accordance with Table § 85–20–C.

## IV.

## CONCLUSION

For the foregoing reasons, the January 23, 2007, order of the Workers' Compensation Board of Review is hereby affirmed.

Affirmed.

Chief Justice BENJAMIN disqualified.

Judge FOX, sitting by temporary assignment.

---

**14.** At this juncture, we limit our discussion specifically to the particular provision of W. Va. C.S.R. § 85–20–1, *et seq.,* that is applicable to Mr. Simpson's claim for PPD benefits for his work-related lumbar spine injury, *i.e.,* W. Va. C.S.R. Table § 85–20–C, because this is the only provision with respect to which a record has been developed in this case. *See, e.g.,* Syl. pt. 6, in part, *McConaha v. Rust,* 219 W.Va. 112, 632 S.E.2d 52 (2006) (" '[T]he Supreme Court of Appeals is limited in its authority to resolve assignments of nonjurisdictional errors to a consideration of those matters ... fairly arising upon the portions of the record designated for appellate review.' Syl. Pt. 6, in part, *Parker v. Knowlton Const[r]. Co., Inc.,* 158 W.Va. 314, 210 S.E.2d 918 (1975)."); Syl. pt. 6, in part, *In re Michael Ray T.,* 206 W.Va. 434, 525 S.E.2d 315 (1999) ("'[A]ppellate review must be limited to those issues which appear in the record presented to this Court.'").