# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**JAY CROFFORD,**
**Claimant Below, Petitioner**

**FILED**
**August 29, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.)     No. 24-ICA-484          (JCN: 2019005918)**

**KOPPERS INDUSTRIES, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Jay Crofford appeals the November 6, 2024, order of the Workers' Compensation Board of Review ("Board"). Respondent Koppers Industries, Inc., ("Koppers") filed a response.[1] Mr. Crofford filed a reply. The issue on appeal is whether the Board erred in affirming the claim administrator's order, which denied a request to pay a Medicare lien in the amount of $22,430.11.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the Board's order but no substantial question of law. For the reasons set forth below, a memorandum decision reversing the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Crofford filed an occupational disease claim alleging that he contracted chronic lymphocytic leukemia ("CLL") in the course of and resulting from his employment with Koppers. On August 22, 2019, the claim administrator denied Mr. Crofford's application for benefits based upon a finding that his disease was not related to his employment. On August 10, 2020, the Office of Judges ("OOJ") reversed the claim administrator's order and held the claim compensable for CLL. On January 21, 2021, the Board affirmed the OOJ's decision. Kopper's Industries, Inc., did not appeal the Board's order.

Mr. Crofford was treated by Nicholas Mastros, M.D., from December 9, 2020, through March 17, 2021. Mr. Crofford presented to Dr. Mastros on December 9, 2020, for evaluation of a possible basal cell carcinoma on his face. Mr. Crofford was noted to have a history of squamous cells in the past, and it was further noted that Mr. Crofford's past surgical history included skin cancer removal. Dr. Mastros assessed Mr. Crofford with recurrent squamous cell carcinoma of the face, he noted that the same ulcerated area had

---

[1] Mr. Crofford is represented by R. Dean Hartley, Esq., and David B. Lunsford, Esq., Hartley Law Group, PLLC. Koppers is represented by Michael S. Faber, Esq.. Dickie, McCamey & Chilcote, P.C.

been frozen off in the past, and he recommended surgical excision with frozen section margins. Mr. Crofford returned to Dr. Mastros for post-operative follow-up of his squamous cell carcinoma on December 28, 2020, and March 17, 2021, and he reported that he was doing well. Mr. Crofford further reported two new lesions on his face and scalp. Dr. Mastros assessed Mr. Crofford with a skin lesion and squamous cell carcinoma of the face, and he recommended a CT scan of Mr. Crofford's neck to check for enlarged lymph nodes and a biopsy of the two new skin lesions.

The record contains a Confidential Release and Settlement Agreement between Mr. Crofford and SAL Chemical Co., Inc., dated October 1, 2022. The terms of the release were redacted. According to paragraph 4 of the release, Mr. Crofford was solely responsible for reimbursing Medicare for any conditional payments made by Medicare on his behalf. SAL, a released party, was to report any requisite information to Medicare. Mr. Crofford agreed to indemnify, defend and hold SAL harmless against and from any Medicare claims, actions, judgments, or settlements asserted by any entity arising from the subject of SAL's payment to him. Both parties acknowledged that they had considered Medicaid's interest and determined that "an allocation for future Medicaid covered expenses is not required…."

Letters from the Centers for Medicare & Medicaid Services ("CMS") to Mr. Crofford dated April 17, 2023, and June 28, 2024, indicate that Mr. Crofford owed a conditional lien payment to CMS in the amount of $20,889.47 for an incident date of May 31, 2014. The letters referred to a settlement agreement dated October 11, 2022, in the amount of $37,500 in relation to a civil liability case, and the responsible insurer or reporting entity (RRE) is identified as Navigators Insurance Company. Attached to the letters is a payment summary form that lists the conditional medical expenses paid by CMS to various medical providers for the period of February 5, 2020, through September 9, 2022. The letters contain no reference to Mr. Crofford's compensable date of injury of October 21, 2016, or the JCN in this claim.

Mr. Crofford was deposed on November 15, 2023, and he testified that he had skin cancer removed from his back 30 years ago. Mr. Crofford further testified that his doctors have informed him that he is more susceptible to skin cancer because of his CLL diagnosis. Mr. Crofford stated that he has had skin cancer removed from his body six times within the last five to six years.

Mr. Crofford submitted three articles into the record. The first is titled, "Cutaneous squamous cell carcinoma in patients with chronic lymphocytic leukemia: a systematic review of the literature" dated 2022, written by Lai, et al. The authors found that 3.2% of CLL patients develop a subsequent cutaneous squamous cell carcinoma, and they noted that several epidemiologic studies have reported a 1.86 to 8.6 increased risk of cutaneous squamous cell carcinoma in patients with CLL. The second is titled, "Metastatic squamous

cell carcinoma in chronic lymphocytic leukemia in a haematology-dermatology multidisciplinary clinic" dated 2023, also written by Lai, et al. According to the article, CLL patients have a greater than twofold increased risk of developing a second malignancy, and of those second cancers, non-melanoma skin cancers are the most frequent. The third is titled, "Association of Advanced Leukemic Stage and Skin Cancer Tumor Stage with Poor Skin Cancer Outcomes in Patients with Chronic Lymphocytic Leukemia" dated 2014, written by Velez, et al. The article states that it is well established that patients with CLL have an increased risk of developing skin cancer. The study revealed that in patients with CLL and non-basal cell carcinoma skin cancer, mortality is as high from skin cancer as from CLL.

On November 6, 2024, the Board affirmed the claim administrator's order denying a request to pay a Medicare lien in the amount of $22,430.11. The Board found that the evidence does not support a finding that the conditional payments made by Medicare were for the treatment of CLL. Mr. Crofford now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

Here, the Board determined that the evidence did not support a finding that the treatment at issue was medically related to CLL.

Upon review, we conclude that the Board was clearly wrong in deciding this case on its merits as the Board does not have jurisdiction over the issue presented in this case.

3

We note that the Board decided this case as though it was an issue of treatment authorization for CLL, an issue over which the Board would have jurisdiction. However, we find that the issue considered by the Board is not the true issue presented in this case, which we find to be simply a request to pay a Medicare lien. The Board does not have jurisdiction over such a request.

As pointed out by the Supreme Court of Appeals of West Virginia ("SCAWV") in *BrickStreet Mut. Ins. Co. v. Zurich Am. Ins. Co.,* 240 W. Va. 414, 421, 813 S.E.2d 67, 74 (2018), "the right to [workers'] compensation *benefits* is wholly statutory." Syl. pt. 2, in part, *Dunlap v. State Comp. Dir.*, 149 W. Va. 266, 140 S.E.2d 448 (1965) (emphasis added). *Accord* Syl. pt. 9, *Simpson v. West Virginia Office of Ins. Comm'r*, 223 W. Va. 495, 678 S.E.2d 1 (2009); Syl. pt. 5, *State ex rel. ACF Indus., Inc. v. Vieweg*, 204 W. Va. 525, 514 S.E.2d 176 (1999). In *BrickStreet,* the Court considered three certified questions from the U.S. Court of Appeals for the Fourth Circuit. In the case, Zurich contended that it disputed the Office of Judges' ("OOJ") determination regarding the proper chargeable employer. However, the SCAWV determined that the dispute was actually one that required the interpretation of rules and statutes pertaining to a contract made by professional employer organizations and which party was responsible for obtaining workers' compensation coverage, as opposed to an issue about the proper chargeable employer. The SCAWV determined that the OOJ did not have the authority to preside over such a dispute, noting that the case did not involve an injured employee's right to workers' compensation benefits as his claim was held compensable and his entitlement to workers' compensation benefits was not in dispute. The SCAWV quoted W. Va. C.S.R. § 93-1-4 as follows[2]:

> [t]he purpose of the litigation process before the Office of Judges is to receive and consider, as expeditiously and as fairly as possible, evidence and information relevant to the determination of the rights of the parties and to provide a review of claims management rulings made by the claim administrator with regard to the grant or denial of any award, or the entry of any order, or the grant or denial of any modification or change with respect to former findings, orders[,] or awards made pursuant to the West Virginia Workers' Compensation Law, W. Va. Code § 23-1-1 et seq., as amended.

Based on the SCAWV's ruling in *BrickStreet*, we find that the Board does not have jurisdiction to decide the issue of payment of the Medicare lien. Accordingly, we reverse the Board's November 6, 2024, order, and remand the matter to the Board with instructions to dismiss the claim due to a lack of jurisdiction.

---

[2] The Board's procedural rule W. Va. § 102-1-4 is substantially the same as the former rule of the OOJ.

4

Reverse and Remanded.

**ISSUED:** August 29, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White