719 S.E.2d 747

Craig A. GRIFFITH, State Tax Commissioner of West Virginia, Respondent Below, Petitioner,

v.

FRONTIER WEST VIRGINIA, INC., Petitioner Below, Respondent.

No. 11–0166.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 19, 2011.

Decided Nov. 10, 2011.

---

4. *In re Langenfeld*, 160 N.H. 85, 89, 993 A.2d 232, 236 (2010) (citation omitted).

5. *In re Marriage of Brown*, 776 N.W.2d 644, 650 (Iowa 2009).

Darrell V. McGraw, Jr., Attorney General, L. Wayne Williams, Assistant Attorney General, Charleston, WV, for the Petitioner.

Thomas R. Goodwin, Carte P. Goodwin, J. David Fenwick, Goodwin & Goodwin, LLP, Charleston, WV and Joseph J. Starsick, Jr., Associate General Counsel–Southeast Region, Frontier Communications, Charleston, WV, for the Respondent.

DAVIS, Justice:

The petitioner herein and respondent below, Craig Griffith, State Tax Commissioner of West Virginia (hereinafter "Tax Commissioner"),[1] appeals from an order entered Sep-

---

1. On July 1, 2010, Craig A. Griffith was confirmed as the State Tax Commissioner of West Virginia, replacing the former Tax Commissioner, Christopher G. Morris. Accordingly, Mr.

tember 14, 2010, by the Circuit Court of Berkeley County. By that order, the circuit court reversed an earlier order of the Office of Tax Appeals;[2] found that W. Va.Code § 11–13B–2(b)(5) (1987) (Repl.Vol.2008) is plain and unambiguous; and concluded that W. Va.C.S.R. § 110–13B–2.6 (1988) is an invalid legislative rule. The circuit court further determined that the West Virginia Public Service Commission's (hereinafter "PSC") December 23, 2004, list of competitive services that are exempt from the Telecommunications Tax defines exempt competitive services for the 2004 tax year. Under the circuit court's order, then, the respondent taxpayer herein and petitioner below, Frontier West Virginia, Inc. (hereinafter "Frontier"),[3] is entitled to a refund of its Telecommunications Tax for the 2004 tax year in the amount of $9,359,083.60. On appeal to this Court, the Tax Commissioner argues that the circuit court incorrectly interpreted and applied the governing statute and the corresponding legislative rule. In this regard, the Commissioner contends that, pursuant to W. Va.C.S.R. § 110–13B–2.6, the PSC's exempt competitive services list of December 23, 2004, applies to the calendar year *following* the PSC's issuance of its list and not to the calendar year in which the list is issued. Upon a review of the parties' arguments, the designated record, and the pertinent authorities, we affirm, in part, and reverse, in part, the September 14, 2010, order of the Berkeley County Circuit Court and reinstate the April 23, 2007, order of the Office of Tax Appeals. In summary, we affirm the circuit court's ruling finding the subject statute, W. Va.Code § 11–13B–2(b)(5), plain and unambiguous, and we reverse the circuit court's ruling finding the governing rule, W. Va.

Griffith has been substituted as the named Tax Commissioner in the instant appeal. *See* W. Va. Rev. R.App. P. 41(c) (providing for substitution of public officers as parties to appeals pending in Supreme Court of Appeals of West Virginia).

2. The referenced order of the Office of Tax Appeals was entered on April 23, 2007.

3. During the pendency of these proceedings, Frontier West Virginia, Inc., acquired Verizon West Virginia, Inc. Accordingly, Frontier has been substituted as the appropriate party to these proceedings. *See* W. Va. Rev. R.App. P. 41(b) (permitting substitution of parties in appeals

C.S.R. § 110–13B–2.6, invalid. Furthermore, we find that the PSC's list of exempt competitive services does not apply to define a taxpayer's gross income for the calendar year in which the PSC issues its list; rather, the PSC's list operates to define a taxpayer's gross income for the calendar year *following* the issuance of the list.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The facts underlying the case *sub judice* have been stipulated to by the parties and are not disputed. By way of background, the State of West Virginia imposes a Telecommunications Tax upon "every telecommunications [4] business selling or furnishing telegraph, telephone or other telecommunications service ... within this State[.]" W. Va.Code § 11–13B–3(a) (1985) (Repl.Vol. 2008) (footnote added). Such tax is levied upon the gross income of telecommunications service providers. *See* W. Va.Code § 11–13B–3(b). Telecommunications gross income does not include, however, those services that the PSC determines to be subject to competition. In this regard, the PSC is required to issue, every calendar year, a list of those services it deems to be exempt competitive services:

> [O]n and after the first day of July, one thousand nine hundred eighty-eight, the term "gross income" of a telephone company or communications carrier shall not include gross income from the provision of commodities or services which shall be determined by the Public Service Commission of West Virginia to be subject to

pending in Supreme Court of Appeals of West Virginia).

4. "Telecommunications" is defined as "all telephone, radio, light, light wave, radio telephone, telegraph and other communication, or means of communication, whether used for voice communication, computer data transmission, or other encoded symbolic information transfers. The term shall not include commercial broadcast radio or television, cable television or amateur or citizen's band radio." W. Va.Code § 11–13B–2(b)(11) (1987) (Repl.Vol.2008).

competition. On or before the thirty-first day of December of each calendar year, the Public Service Commission of West Virginia shall submit to the Tax Commissioner a listing of those commodities or services which it has determined to be subject to competition. Such listing shall constitute a conclusive determination for the purposes of defining "gross income" within the meaning of this subsection.

W. Va.Code § 11–13B–2(b)(5) (1987) (Repl. Vol.2008). This statute is silent, however, as to the year to which the PSC's exempt services list applies to determine a telecommunication business's gross income.

To "explain and clarify" various provisions of the Telecommunications Tax Act, the Tax Commissioner adopted legislative rule W. Va. C.S.R. § 110–13B–1 et seq. See W. Va. C.S.R. § 110–13B–1.1 (1988). With respect to the definition of "gross income," W. Va. C.S.R. § 110–13B–2.6 (1988) provides, in pertinent part, that

> [o]n or after July 1, 1988, the term "gross income" of a telephone company or communications carrier shall not include gross income from the provision of commodities or services which shall be determined by the Public Service Commission of West Virginia to be subject to competition. The Public Service Commission of West Virginia will submit to the Tax Commissioner, on or before December 31 of each calendar year, a listing of those commodities or services the trading in which it has determined to be subject to competition. Such listing shall constitute a conclusive determination for the purpose of defining "gross income" of a telephone company or communications carrier for the next succeeding calendar year.

(Emphasis added). Thus, pursuant to the legislative rule clarifying the statutory definition of "gross income," the PSC's exempt services list applies to define a telecommunication business's gross income for the calendar year following the year in which the PSC issues such list. See id.

Frontier, the taxpayer herein, is a telecommunications business providing telecommunications services upon which it is required to pay the Telecommunications Tax. As a calendar year taxpayer, Frontier's tax year corresponds with the calendar year. Thus, Frontier's 2004 tax year was the period from January 1, 2004, to December 31, 2004, and its 2005 tax year was from January 1, 2005, to December 31, 2005. Throughout the 2004 calendar year, Frontier reported and paid estimated Telecommunications Tax as required by statute. See W. Va.Code § 11–13B–6 (1988) (Repl.Vol.2008). Failure to pay sufficient estimated taxes could subject a telecommunications business to penalties. See W. Va.Code § 11–10–18b (1993) (Repl. Vol.2008).

On December 23, 2004, the PSC issued an order enumerating sixty-six different services and commodities it deemed to be subject to competition and thus exempt from the Telecommunications Tax; in its order, the PSC stated that the identified services "are certified as competitive telecommunications services for the 2004 tax year." (Emphasis added). Thereafter, Frontier, on May 31, 2005, timely filed a Telecommunications Tax refund claim for $9,359,083.60 with the State Tax Department. In support of its refund claim, Frontier contended that it had overpaid its Telecommunications Tax from January 1, 2004, through December 31, 2004, based upon its payment of tax upon services it provided to its customers that the PSC determined to be exempt by its December 23, 2004, order. On August 15, 2005, the Tax Commissioner denied Frontier's refund claim explaining that "[w]hen the PSC makes a ruling regarding the Telecommunications tax, it does not become effective until the following year." (Emphasis added).

Frontier then sought further review of its refund claim before the Office of Tax Appeals, renewing its original refund request and further seeking interest thereon. By order entered April 23, 2007, the Office of Tax Appeals (hereinafter "OTA") affirmed the Tax Commissioner's denial of Frontier's refund claim. In summary, the OTA determined that W. Va.Code § 11–13B–2(b)(5) is silent as to the year to which the PSC's exempt services list applies. Moreover, the OTA found W. Va.C.S.R. § 110–13B–2.6 to be a valid legislative rule promulgated by the Tax Commissioner to address this legislative

silence. Applying the language of W. Va. C.S.R. § 110–13B–2.6, the OTA concluded that the PSC's exempt services list applies "to the *succeeding* calendar year." (Emphasis added). Thus, the OTA denied Frontier's claim for a refund of the Telecommunications Tax it had paid for calendar year 2004 because it concluded that the PSC's December 23, 2004, exempt services list applies to the 2005 calendar year.

Following this decision, Frontier appealed to the Circuit Court of Berkeley County. The circuit court reversed the decision of the OTA by order entered September 14, 2010, determining that the subject statute, W. Va. Code § 11–13B–2(b)(5), is plain and unambiguous. Pursuant to this statute, the circuit court found that the PSC's exempt services list is deemed to be "conclusive"; thus, the PSC's December 23, 2004, exempt services list, which specifies that the enumerated services "are certified as competitive telecommunications services *for the 2004 tax year*," is the definitive authority as to the year to which the PSC's exempt services list applies. (Emphasis added). Because the Tax Commissioner's legislative rule deviates from this conclusive presumption by identifying a different period of time to which the PSC's exempt services list applies, *i.e.,* "the next *succeeding calendar year*," the circuit court concluded that W. Va.C.S.R. § 110–13B–2.6 is an invalid legislative rule. (Emphasis added). Insofar as Frontier's 2004 tax year is the 2004 calendar year because it is a calendar year taxpayer, the circuit court's ruling entitles Frontier to receive the refund it had requested for overpayment of its estimated 2004 Telecommunications Tax in the amount of $9,359,083.60.

From this adverse ruling, the Tax Commissioner appeals to this Court.

## II.

### STANDARD OF REVIEW

The primary issues in the case *sub judice* involve our review of the circuit court's construction of a statutory provision and a rule interpreting said statute. With respect to circuit court orders, generally, we previously have held that,

[i]n reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. pt. 2, *Walker v. West Virginia Ethics Comm'n,* 201 W.Va. 108, 492 S.E.2d 167 (1997). *Accord* Syl. pt. 4, *Burgess v. Porterfield,* 196 W.Va. 178, 469 S.E.2d 114 (1996) ("This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo.*").

Moreover, with respect to the precise legal issues before us, *i.e.,* the interpretation and application of a statute and a rule, we have held that "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syl. pt. 1, *Appalachian Power Co. v. State Tax Dep't of West Virginia,* 195 W.Va. 573, 466 S.E.2d 424 (1995). *Accord* Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."). Mindful of these standards, we proceed to consider the errors assigned in this case.

## III.

### DISCUSSION

On appeal to this Court, the Tax Commissioner contends that the PSC's list of exempt competitive services defines taxable gross income for the calendar year *following* the issuance of its list. By contrast, Frontier suggests that the PSC's tax-exempt list applies to determine gross income for the *current* calendar year in which the list is issued. Before this Court, the Tax Commissioner assigns errors to the circuit court's rulings finding that the governing statute, W. Va. Code § 11–13B–2(b)(5), is plain and unam-

biguous and determining that the applicable legislative rule, W. Va.C.S.R. § 110–13B–2.6, is invalid.[5] We will address each of these issues in turn.

### A. Construction of W. Va.Code § 11–13B–2(b)(5)

The Tax Commissioner first argues that the circuit court erred by ruling that W. Va.Code § 11–13B–2(b)(5) is plain and unambiguous. In support of its argument, the Tax Commissioner contends that W. Va.Code § 11–13B–2(b)(5) is ambiguous because it is capable of multiple constructions regarding the year to which the PSC's exempt services list applies. Furthermore, the Tax Commissioner claims that the subject statute is of such doubtful or obscure meaning that reasonable minds may differ as to its proper construction. *Citing Davis Mem'l Hosp. v. West Virginia State Tax Comm'r*, 222 W.Va. 677, 671 S.E.2d 682 (2008). Because Frontier and the circuit court have adopted one interpretation of the subject statute while the Tax Commissioner advocates a different interpretation, the Tax Commissioner suggests that W. Va.Code § 11–13B–2(b)(5) is ambiguous. In this regard, the Tax Commissioner represents that Frontier and the circuit court propose that W. Va.Code § 11–13B–2(b)(5) allows the PSC to determine the services that are exempt from the Telecommunications Tax *and* the year to which said list applies. By contrast, the Tax Commissioner asserts that W. Va.Code § 11–13B–2(b)(5) authorizes the PSC to create the exempt services list, but that it is silent as to the year to which said list applies.

Frontier rejects the Tax Commissioner's characterization of W. Va.Code § 11–13B–2(b)(5) as ambiguous and contends, instead, that this statute is plain and should be applied as it is written rather than be construed. As to this point, Frontier asserts that the plain language of W. Va.Code § 11–13B–2(b)(5) directs the PSC to issue an exempt services list that serves as the sole authority on the matter. Frontier further contends that, pursuant to the governing statute, the PSC's exempt services list must be applied to the year in which it is issued to give full effect to all of the words used in W. Va.Code § 11–13B–2(b)(5). *Citing Mitchell v. City of Wheeling*, 202 W.Va. 85, 502 S.E.2d 182 (1998). In this regard, Frontier suggests that, to give effect to the statute's directive that competitive services will not be subject to the Telecommunications Tax "on and after" July 1, 1988, the PSC's exempt services list must be applied to year in which the list is issued.

Alternatively, to the extent that W. Va. Code § 11–13B–2(b)(5) is determined to be ambiguous, Frontier urges that such ambiguity should be resolved in favor of Frontier and that the ambiguity should be construed strictly against the Tax Commissioner as a law imposing a tax. *Quoting Coordinating Council for Indep. Living, Inc. v. Palmer*, 209 W.Va. 274, 281, 546 S.E.2d 454, 461 (2001) ("Where ... the statute to be interpreted concerns taxation, we usually construe the tax law in a manner that is favorable to the subject taxpayer.").

At issue in this assignment of error is the construction of W. Va.Code § 11–13B–2(b)(5) (1987) (Repl.Vol.2008), which provides, in full:

> The term "gross income" of a telephone company or communications carrier shall be defined as all gross income received from the provision of local exchange or long distance voice or data communications services but shall not include gross income from the provision of network access, billing or similar services provided to end users, other telephone companies, or communications carriers: Provided, *That on and after the first day of July, one thousand nine hundred eighty-eight, the term "gross income" of a telephone company or communications carrier shall not include gross income from the provision of commodities or services which shall be determined by the Public Service Commission of West Virginia to be subject to competition. On or before the thirty-first day of*

5. The Tax Commissioner also raises a third assignment of error regarding the conflict of authority among the circuit courts of this State regarding the year to which the PSC's exempt services list applies to define a telecommunications business's gross income. Insofar as our resolution of the statutory and regulatory issues raised by the Tax Commissioner necessarily will resolve this conflict of authority, we need not separately consider this assignment of error.

*December of each calendar year, the Public Service Commission of West Virginia shall submit to the Tax Commissioner a listing of those commodities or services which it has determined to be subject to competition. Such listing shall constitute a conclusive determination for the purposes of defining "gross income" within the meaning of this subsection.*

(Emphasis added). The emphasized portion of W. Va.Code § 11–13B–2(b)(5) discusses the PSC's creation of a list of telecommunications services that are excluded from the definition of "gross income" and therefore are exempt from the Telecommunications Tax. The precise meaning and application of this language, however, is disputed by the parties.

■ When faced with a matter of statutory construction, the first inquiry involves an assessment of the specific statutory language at issue as well as a consideration of the underlying legislative intent. *See Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W.Va. at 587, 466 S.E.2d at 438 ("We look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed."); Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975) ("The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature."). If the language used by the Legislature is plain, the statute should be applied and not construed. "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968). However, if the statutory language is not clear, the statute is ambiguous and must be construed to ascertain the meaning intended by the Legislature. "A statute that is ambiguous must be construed before it can be applied." Syl. pt. 1, *Farley v. Buckalew*, 186 W.Va. 693, 414 S.E.2d 454 (1992).

The statute under consideration, W. Va. Code § 11–13B–2(b)(5), first defines "gross income" for purposes of assessing the Telecommunications Tax. In pertinent part, this portion of W. Va.Code § 11–13B–2(b)(5) states that

[t]he term "gross income" of a telephone company or communications carrier shall be defined as all gross income received from the provision of local exchange or long distance voice or data communications services but shall not include gross income from the provision of network access, billing or similar services provided to end users, other telephone companies, or communications carriers[.]

Neither of the parties challenge the meaning of this preliminary portion of the statute, and further construction of this definitional language is not instructive to resolving the instant controversy.

■ The second portion of the statute, which both parties interpret differently, provides for the exclusion of competitive services from the definition of "gross income" and the corresponding exemption of such services from the Telecommunications Tax. This proviso directs that,

[p]rovided, [t]hat on and after the first day of July, one thousand nine hundred eighty-eight, the term "gross income" of a telephone company or communications carrier *shall* not include gross income from the provision of commodities or services which *shall* be determined by the Public Service Commission of West Virginia to be subject to competition. On or before the thirty-first day of December of each calendar year, the Public Service Commission of West Virginia *shall* submit to the Tax Commissioner a listing of those commodities or services which it has determined to be subject to competition. Such listing *shall* constitute a conclusive determination for the purposes of defining "gross income" within the meaning of this subsection.

W. Va.Code § 11–13B–2(b)(5) (emphasis added). This language plainly communicates four specific parameters to narrow the definition of "gross income" for purposes of the Telecommunications Tax, which the Legislature chose to impart using the mandatory term "shall." " 'It is well established that the word "shall," in the absence of language in the statute showing a contrary intent on

the part of the Legislature, should be afforded a mandatory connotation.' Syllabus Point 1, *Nelson v. West Virginia Public Employees Insurance Board,* 171 W.Va. 445, 300 S.E.2d 86 (1982)." Syl. pt. 1, *E.H. v. Matin,* 201 W.Va. 463, 498 S.E.2d 35 (1997).

Specifically, the proviso language of W.Va. Code § 11–13B–2(b)(5) clearly commands that (1) after July 1, 1988, "gross income" does not include gross income from the provision of commodities or services that are subject to competition; (2) the PSC determines which commodities or services are subject to competition; (3) before December 31st of each calendar year, the PSC is required to submit to the Tax Commissioner a list of those commodities or services that the PSC has determined to be subject to competition; and (4) the PSC's list constitutes a conclusive determination of the meaning of "gross income" for purposes of the Telecommunications Tax. Moreover, the Legislature's inclusion of the word "shall" in each of these provisions makes each of these four directives mandatory, affording no discretion in their application.

■■ What neither part of W. Va.Code § 11–13B–2(b)(5) indicates, however, is the year to which the PSC's exempt services list applies to limit the definition of "gross income" and to exempt such services from the Telecommunications Tax. The statute simply is silent on this point. Contrary to the Tax Commissioner's assertions, however, legislative silence does not constitute statutory ambiguity. *E.g., Sniffin v. Cline,* 193 W.Va. 370, 374, 456 S.E.2d 451, 455 (1995) (distinguishing between silence and ambiguity of statute interpreted by agency (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984))); *Consolidation Coal Co. v. Krupica,* 163 W.Va. 74, 80, 254 S.E.2d 813, 816–17 (1979) (noting distinction between statute that is silent as opposed to statute that is ambiguous (citations omitted)). *See also DeLong v. Farmers Bldg. & Loan Ass'n,* 148 W.Va. 625, 634, 137 S.E.2d 11, 17 (1964) (differentiating between silence and ambiguity in instrument creating joint estate). As will be discussed in Section III.B., *infra,* the very function of administrative rules, be they

interpretive or legislative, is to supply that which the Legislature has omitted from its statutory enactments. *See, e.g., West Virginia Health Care Cost Review Auth. v. Boone Mem'l Hosp.,* 196 W.Va. 326, 337, 472 S.E.2d 411, 422 (1996) (commenting that this Court is "obligated to defer to an agency's view [expressed through its administrative rule] only when there is a statutory gap or ambiguity"); Syl. pt. 4, in part, *Appalachian Power Co.,* 195 W.Va. 573, 466 S.E.2d 424 (recognizing that legislative rules provide guidance when "statute is silent or ambiguous with respect to the specific issue"). Thus, we reiterate, silence does not, in and of itself, render a statute ambiguous.

■ Furthermore, the circuit court, in concluding that the subject statutory language is plain also determined that the PSC's *order* announcing its exempt services list is to be accorded deference because such *order* constitutes a "conclusive determination." However, this construction of the statute's terminology is not supported by the statute's actual wording. Rather than giving preclusive effect to the PSC's entire exempt services *order,* the plain language of W.Va. Code § 11–13B–2(b)(5) limits the authority granted to the PSC to the identification of the specific exempt services, themselves; as such, only the PSC's *listing* of such services is deemed to be determinative of the meaning of "gross income." On this point, the statute plainly states that "[s]uch *listing shall constitute a conclusive determination* for the purposes of defining 'gross income' within the meaning of this subsection." W.Va.Code § 11–13B–2(b)(5) (emphasis added). This language does not afford authority to the PSC to decide matters other than which commodities or services are subject to competition and, thus, are exempt from the Telecommunications Tax's definition of "gross income."

Accordingly, we hold that, effective July 1, 1988, the plain language of W. Va.Code § 11–13B–2(b)(5) (1987) (Repl.Vol.2008) excludes from the Telecommunication Tax's definition of "gross income" those commodities or services which the Public Service Commission of West Virginia ("PSC") determines to be subject to competition. The PSC is required to

submit its exempt services list to the State Tax Commissioner of West Virginia on or before December 31st of each calendar year, and the PSC's "listing shall constitute a conclusive determination" of the definition of "gross income" for purposes of the Telecommunications Tax.

Applying this holding to the facts of the case *sub judice,* we conclude that the circuit court correctly found that W. Va.Code § 11–13B–2(b)(5) is plain and unambiguous, and we affirm the circuit court's ruling in this regard. We do not, however, approve of the circuit court's interpretation of the subject statute as affording preclusive effect to the PSC's *order* announcing its exempt services list or the lower court's corollary conclusion that such conclusiveness necessarily renders W. Va.C.S.R. § 110–13B–2.6 invalid.

### B. Validity of W. Va.C.S.R. § 110–13B–2.6

The Tax Commissioner additionally argues that the circuit court erred by ruling that W.Va.C.S.R. § 110–13B–2.6 is an invalid legislative rule. Rather, the Tax Commissioner asserts that the legislative rule that he has adopted, W. Va.C.S.R. § 110–13B–2.6, is valid because it specifically addresses an issue upon which the Legislature remained silent by statute: the year to which the PSC's exempt services list applies. *Quoting Appalachian Power Co. v. State Tax Dep't of West Virginia,* 195 W.Va. at 589, 466 S.E.2d at 440 ("[I]f the Legislature explicitly leaves a gap in legislation, then an agency has authority to fill the gap[,] and the agency is entitled to deference on the question."). In this regard, the rule specifically states that the PSC's exempt services list applies to the calendar year *following* the year in which the PSC adopted the list.

Moreover, the Tax Commissioner argues that W. Va.C.S.R. § 110–13B–2.6, as a legislative rule, should be accorded the force and effect of a statute. *Quoting Kincaid v. Mangum,* 189 W.Va. 404, 411–12, 432 S.E.2d 74, 81–82 (1993) ("[O]ur legislature does not simply review the rules recommended by the agencies, but, instead gives our rules the same effect as statutes." (citation omitted)), *clarified by Swiger v. UGI/AmeriGas, Inc.,* 216 W.Va. 756, 613 S.E.2d 904 (2005). Fur-

thermore, although the Legislature approved W. Va.C.S.R. § 110–13B–2.6 as part of the 1988 omnibus bill, it nevertheless is presumptively valid because this Court has held other legislative rules adopted through this same omnibus bill to be valid. *See Kincaid,* 189 W.Va. at 416, 432 S.E.2d at 86 (determining that omnibus bill may not be used to approve regulations from different state agencies but that, because Court's decision was not clearly foreshadowed, application of its holding therein would be prospective only).

Finally, the Tax Commissioner contends that its interpretation of W. Va.Code § 11–13B–2(b)(5) through W. Va.C.S.R. § 110–13B–2.6 is reasonable insofar as many taxpayers are fiscal year taxpayers rather than calendar year taxpayers. Applying the PSC's exempt services list to the calendar year in which the list was issued, as advocated by Frontier and determined by the circuit court, would be problematic for fiscal year taxpayers who conceivably would be required to file their tax returns before the PSC has issued its list. Consequently, these taxpayers would then be required to seek a refund of taxes they have overpaid, as Frontier has done in the case *sub judice* with respect to the estimated taxes it was required to make during 2004, or be subject to penalties if they have not paid sufficient estimated taxes. *See* W. Va.Code § 11–13B–6; W. Va.Code § 11–10–18b. By contrast, if the PSC's exempt services list is applied to the calendar year *following* the year in which the list was issued, as the Tax Commissioner proposes and as required by W. Va.C.S.R. § 110–13B–2.6, taxpayers would be able to calculate their gross income and their attendant tax liability with certainty. Thus, the Tax Commissioner urges that the improperly worded PSC order should be applied to the following calendar year, *i.e.,* 2005, as required by W. Va.C.S.R. § 110–13B–2.6.

Frontier disagrees with the position advocated by the Tax Commissioner and argues, instead, that W. Va.C.S.R. § 110–13B–2.6 is inconsistent with the plain language of W.Va. Code § 11–13B–2(b)(5) insofar as the rule attempts to specify the year to which the PSC's list applies when the statute explicitly

states that the PSC's determination of exempt services shall be conclusive. In other words, Frontier suggests that application of W. Va.C.S.R. § 110–13B–2.6 to determine the year to which the PSC's exempt services list applies would effectively and impermissibly substitute the judgment of the Tax Commissioner, as enunciated in the legislative rule, for that of the PSC when the governing statute, W. Va.Code § 11–13B–2(b)(5), directs that the PSC's determination of exempt services shall be conclusive. Because the legislative rule in this case usurps the PSC's exclusive authority to determine exempt services, Frontier contends that it changes the statute that it is supposed to clarify and, thus, is invalid. *Citing Syncor Int'l Corp. v. Palmer*, 208 W.Va. 658, 662, 542 S.E.2d 479, 483 (2001) (stating that when agency's interpretation of its regulations conflicts with legislative intent, agency's interpretation does not apply); *Appalachian Power Co.*, 195 W.Va. at 588 n. 17, 466 S.E.2d at 439 n. 17 ("[W]hen the agency's interpretation goes beyond that scope of whatever ambiguity the statute contains, no deference is due." (citation omitted)).

Furthermore, Frontier asserts that the inclusion of W. Va.C.S.R. § 110–13B–2.6 in the 1988 omnibus bill and the Legislature's approval thereof in this regard militate against the rule's validity insofar as it was not afforded the proper scrutiny prior to its legislative approval. *Citing* Syl. pt. 1, *Kincaid*, 189 W.Va. 404, 432 S.E.2d 74. On this point, Frontier contends that, because this legislative "rule squarely contradicts the statute," it is invalid.

This assignment of error requires us to determine whether the legislative rule that clarifies and provides guidance as to the meaning of W. Va.Code § 11–13B–2(b)(5), *i.e.*, W. Va.C.S.R. § 110–13B–2.6, is valid. W. Va.C.S.R. § 110–13B–2.6 (1988) provides, in full, that

> [t]he term "gross income" of a telephone company or communications carrier shall be defined as all gross income received from the provision of local exchange or long distance voice or data communication services but shall not include gross income from the provision of network access, billing or similar services provided to end users, other telephone companies, or communications carriers. On or after July 1, 1988, the term "gross income" of a telephone company or communications carrier shall not include gross income from the provision of commodities or services which shall be determined by the Public Service Commission of West Virginia to be subject to competition. The Public Service Commission of West Virginia will submit to the Tax Commissioner, on or before December 31 of each calendar year, a listing of those commodities or services the trading in which it has determined to be subject to competition. *Such listing shall constitute a conclusive determination for the purpose of defining "gross income" of a telephone company or communications carrier for the next succeeding calendar year.*

(Emphasis added). It is the last sentence of this rule, which specifies the year to which the PSC's exempt services list applies, that is contested by the parties.

The series of rules of which W. Va.C.S.R. § 110–13B–2.6 forms a part, *i.e.*, W. Va. C.S.R. § 110–13B–1 *et seq.*, pertains to the Telecommunications Tax and was filed on April 4, 1988, becoming effective on that same date. The scope of such rules is to "explain and clarify the West Virginia Telecommunications Tax Act set forth at W. Va. Code § 11–13B–1 et seq." W. Va.C.S.R. § 110–13B–1.1. As noted by Frontier, these rules were approved by the Legislature as part of the 1988 omnibus bill. As such, they are legislative rules, and the parties do not dispute such characterization. Although a multi-topic omnibus bill is not the proper method of approving legislative rules pertaining to different areas of the law,[6] we found it imprudent to invalidate all of the legislative rules adopted in the 1988 omnibus bill because such a result had not been clearly foreshadowed. Moreover, a finding that the subject rules were invalid would have invalidated hundreds of legislative rules in many

---

6. *See* W. Va. Const. art. VI, § 30 ("No act hereafter passed, shall embrace more than one object, and that shall be expressed in the title.").

different areas of the law. *See generally Kincaid v. Mangum,* 189 W.Va. 404, 432 S.E.2d 74. Nevertheless, we find it prudent to undertake an independent evaluation of the validity of W. Va.C.S.R. § 110–13B–2.6 to ensure that it does, in fact, comport with the legislative intent that it purports to clarify.

■ Our analysis begins with an examination of the Legislature's pronouncement on the issue addressed by the subject rule.

Judicial review of an agency's legislative rule and the construction of a statute that it administers involves two separate but interrelated questions, only the second of which furnishes an occasion for deference. In deciding whether an administrative agency's position should be sustained, a reviewing court applies the standards set out by the United States Supreme Court in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The court first must ask whether the Legislature has directly spoken to the precise question at issue. If the intention of the Legislature is clear, that is the end of the matter, and the agency's position only can be upheld if it conforms to the Legislature's intent. No deference is due the agency's interpretation at this stage.

Syl. pt. 3, *Appalachian Power Co. v. State Tax Dep't of West Virginia,* 195 W.Va. 573, 466 S.E.2d 424. In the case *sub judice,* the Legislature has not addressed the issue upon which the rule seeks to provide guidance: the year to which the PSC's exempt services list applies. Thus, we proceed to consider whether the subject rule is valid and whether the instruction provided by the rule is consistent with the governing statute.

If legislative intent is not clear, a reviewing court may not simply impose its own construction of the statute in reviewing a legislative rule. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute. A valid legislative rule is entitled to substantial deference by the reviewing court. As a properly promulgated legislative rule, the rule can be ignored only if the agency

has exceeded its constitutional or statutory authority or is arbitrary or capricious. W.Va.Code, 29A–4–2 (1982).

Syl. pt. 4, *Appalachian Power Co.,* 195 W.Va. 573, 466 S.E.2d 424. The language of W.Va. C.S.R. § 110–13B–2.6 restates, practically verbatim, the language of the statute it purports to clarify, W.Va.Code § 11–13B–2(b)(5). In fact, every provision of W.Va.Code § 11–13B–2(b)(5) is set forth in W.Va.C.S.R. § 110–13B–2.6. The only substantial difference between these two provisions is the inclusion in W.Va.C.S.R. § 110–13B–2.6 of the year to which the PSC's exempt services list applies; this information is absent from W.Va.Code § 11–13B–2(b)(5), which statute simply is silent thereon. Therefore, we must determine whether this final provision comports with the Tax Commissioner's authority to administer and clarify the statutes comprising the Telecommunications Tax.

■ We long have held that

"[i]t is fundamental law that the Legislature may delegate to an administrative agency the power to make rules and regulations to implement the statute under which the agency functions. In exercising that power, however, an administrative agency may not issue a regulation which is inconsistent with, or which alters or limits its statutory authority." Syllabus point 3, *Rowe v. West Virginia Department of Corrections,* 170 W.Va. 230, 292 S.E.2d 650 (1982).

Syl. pt. 6, *Simpson v. West Virginia Office of Ins. Comm'r,* 223 W.Va. 495, 678 S.E.2d 1 (2009). With respect to the instant proceeding, the Tax Commissioner is the statutory official charged with the enforcement of the tax laws of this State. *See* W.Va.Code § 11–1–2 (1933) (Repl.Vol.2008) ("It shall be the duty of the Tax Commissioner to see that the laws concerning the assessment and collection of all taxes and levies, whether of the State or of any county, district or municipal corporation thereof, are faithfully enforced."). As such, the Tax Commissioner likewise is charged with the collection of the Telecommunications Tax at issue herein. *See* W.Va.

Code § 11–13B–5 (1985) (Repl.Vol.2008) (directing taxpayers subject to Telecommunications Tax to file annual tax returns as required by Tax Commissioner); W. Va.Code § 11–13B–6 (requiring taxpayers subject to Telecommunications Tax to remit periodic installments of their Telecommunications Tax liability to Tax Commissioner). Moreover, the Legislature has vested the Tax Commissioner with the authority to promulgate rules to provide guidance as to the interpretation and application of the State's tax laws. *See* W. Va.Code § 11–10–5 (1986) (Repl.Vol.2008) ("The Tax Commissioner may make all needful rules and regulations for the taxes to which this article [West Virginia Tax Procedure and Administration Act] applies as provided in the State Administrative Procedures Act in chapter twenty-nine-a [§§ 29A–1–1 et seq.] of this code[.]"). *See also* W. Va.Code § 11–10–3(a) (2005) (Repl.Vol.2008) (specifying that West Virginia Tax Procedure and Administration Act applies to Telecommunications Tax). Therefore, it is clear that the Tax Commissioner had the authority to promulgate rules to "explain and clarify the West Virginia Telecommunications Tax Act." W. Va.C.S.R. § 110–13B–1.1.

Nevertheless, in adopting rules to clarify the Telecommunications Tax Act, the Tax Commissioner is required to construct his rules so that they are consistent with, and adhere to, the statutory language upon which they are based. *See* Syl. pt. 6, *Simpson,* 223 W.Va. 495, 678 S.E.2d 1. In other words,

"[a]ny rules or regulations drafted by an agency must faithfully reflect the intention of the Legislature, as expressed in the controlling legislation. Where a statute contains clear and unambiguous language, an agency's rules or regulations must give that language the same clear and unambiguous force and effect that the language commands in the statute." Syllabus point 4, *Maikotter v. University of West Virginia Board of Trustees/West Virginia University,* 206 W.Va. 691, 527 S.E.2d 802 (1999).

Syl. pt. 7, *Simpson,* 223 W.Va. 495, 678 S.E.2d 1. *Accord* Syl. pt. 5, *Appalachian Power Co.,* 195 W.Va. 573, 466 S.E.2d 424 ("'"Rules and Regulations of ... [an agency] must faithfully reflect the intention of the

legislature; when there is clear and unambiguous language in a statute, that language must be given the same clear and unambiguous force and effect in the ... [agency's] Rules and Regulations that it has in the statute." Syl. pt. 4, *Ranger Fuel Corp. v. West Virginia Human Rights Commission,* 180 W.Va. 260, 376 S.E.2d 154 (1988).' Syl. pt. 2, in part, *Chico Dairy Company v. Human Rights Commission,* 181 W.Va. 238, 382 S.E.2d 75 (1989).").

The language of the challenged rule herein, W. Va.C.S.R. § 110–13B–2.6, comports with the legislative intent expressed in W.Va. Code § 11–13B–2(b)(5) insofar as it reiterates the statutory language by restating both the statute's definition of "gross income" and its provisional directives instructing the PSC to generate a list of exempt competitive services that are excluded from "gross income." Moreover, in commanding the PSC to construct an exempt services list, the Legislature specified only who (the PSC) was required to prepare the list and what (the exempt services list) was required to be prepared; the Legislature did not address when such list would be applicable. Thus, to the extent that the Legislature failed to specify, in its statute, the year to which the PSC's exempt services list should apply, such legislative silence is properly addressed through an administrative rule, such as the one adopted by the Tax Commissioner to supply this missing information. In this regard, we previously have recognized that "[t]he rule of construction supporting [an administrative agency's rule] is apposite only when the Legislature has blown an uncertain trumpet. If ambiguity or silence does not loom, the occasion for preferential interpretation never arises." *Boone Mem'l Hosp.,* 196 W.Va. at 337, 472 S.E.2d at 422. Here, the Legislature's trumpet has not been blown uncertainly; rather, it has remained moot and never been blown at all. In the face of this legislative silence, it was proper for the Tax Commissioner to adopt W. Va.C.S.R. § 110–13B–2.6 to clarify the temporal applicability of the PSC's exempt services list. In this regard, the Tax Commissioner has specified that "[s]uch listing shall constitute a conclusive determination for the purpose of defining

'gross income' of a telephone company or communications carrier *for the next succeeding calendar year.*" W. Va.C.S.R. § 110–13B–2.6 (emphasis added).

 Because the Tax Commissioner possesses the authority to adopt tax-based rules and because the wording of the challenged rule comports with the statutory language upon which it is based, W. Va.C.S.R. § 110–13B–2.6 is entitled to enforcement as a properly promulgated legislative rule. " 'Procedures and rules properly promulgated by an administrative agency with authority to enforce a law will be upheld so long as they are reasonable and do not enlarge, amend or repeal substantive rights created by statute.' Syllabus point 4, *State ex rel. Callaghan v. West Virginia Civil Service Commission,* 166 W.Va. 117, 273 S.E.2d 72 (1980)." Syl. pt. 11, *Simpson,* 223 W.Va. 495, 678 S.E.2d 1. *See also* Syl. pt. 2, *Boone Mem'l Hosp.,* 196 W.Va. 326, 472 S.E.2d 411 ("Once a disputed regulation is legislatively approved, it has the force of a statute itself. Being an act of the West Virginia Legislature, it is entitled to more than mere deference; it is entitled to controlling weight. As authorized by legislation, a legislative rule should be ignored only if the agency has exceeded its constitutional or statutory authority or is arbitrary or capricious."). In enforcing the provisions of W.Va.C.S.R. § 110–13B–2.6, we are bound to apply the rule's plain language just as we did when considering the meaning of its governing statute, W. Va.Code § 11–13B–2(b)(5):

If the language of an enactment is clear and within the constitutional authority of the law-making body which passed it, courts must read the relevant law according to its unvarnished meaning, without any judicial embroidery. Even when there is conflict between the legislative rule and the initial statute, that conflict will be resolved using ordinary canons of interpretation.

Syl. pt. 3, *Boone Mem'l Hosp.,* 196 W.Va. 326, 472 S.E.2d 411.

Accordingly, we hold that, pursuant to W.Va.C.S.R. § 110–13B–2.6 (1988), the list of exempt competitive services generated by the Public Service Commission of West Virginia under W. Va.Code § 11–13B–2(b)(5)

(1987) (Repl.Vol.2008) applies to define "gross income" "for the next succeeding calendar year" following the year in which the PSC issues its exempt services list.

Applying this holding to the case *sub judice,* we are compelled to address a misinterpretation that has been assigned to W. Va. C.S.R. § 110–13B–2.6. Contrary to the circuit court's conclusion, W. Va.C.S.R. § 110–13B–2.6 does *not* conflict with the language of the statute it purports to clarify, W. Va.Code § 11–13B–2(b)(5). The circuit court concluded that, because the statutory language gives preclusive effect to the PSC's exempt services list, the statute, and by implication the PSC's order announcing its exempt services list, trumps any contradictory rule language. In other words, to the extent that W. Va. C.S.R. § 110–13B–2.6 specifies the year to which the PSC's exempt services list applies and conflicts with the PSC's December 23, 2004, order, which also purports to dictate the applicable year, the circuit court concluded that, by virtue of W. Va.Code § 11–13B–2(b)(5), the PSC's order is determinative. We find this reasoning to be faulty in two regards.

First, the circuit court's interpretation fails to appreciate that the statutory language addressing the PSC's list is more limited than the construction afforded to it by the circuit court. As we discussed in Section III.A., *supra,* W. Va.Code § 11–13B–2(b)(5) requires only that the PSC's exempt services "*listing* shall constitute a conclusive determination." (Emphasis added). The governing statute does not address any other decisions of the PSC or consider the entirety of the order in which the PSC announces its exempt services list; rather, W. Va.Code § 11–13B–2(b)(5) accords preeminent status solely to the PSC's determination of those services or commodities that are subject to competition and, thus, are excluded from the definition of "gross income." Because no other decision of the PSC is accorded conclusive effect by W. Va.Code § 11–13B–2(b)(5), the legislative rule adopted by the Tax Commissioner to specify the year to which the PSC's list applies does not conflict with the governing statute and, thus, cannot be invalidated for this reason. Accordingly, the year specified by W. Va.C.S.R. § 110–13B–2.6, and not by

the PSC's December 23, 2004, order, is the year to which the PSC's December 23, 2004, exempt services list applies.

■ Second, as we have explained previously in this opinion, W. Va.Code § 11–13B–2(b)(5) directs the PSC to determine those telecommunications services or commodities that are subject to competition, which determination, in turn, excludes those designated services or commodities from the definition of "gross income" and exempts them from the Telecommunications Tax, and to communicate this information to the Tax Commissioner. This statute does *not* authorize the PSC to make any other determinations or to render any other decisions regarding the Telecommunications Tax. Rather, the PSC's sole functions pursuant to W. Va.Code § 11–13B–2(b)(5) are to identify exempt competitive services or commodities and to communicate this information to the Tax Commissioner. Therefore, to the extent that the PSC additionally specified the year to which its exempt services list applies, such determination improperly exceeded its statutory authority. *See Frymier–Halloran v. Paige,* 193 W.Va. 687, 694, 458 S.E.2d 780, 787 (1995) (recognizing that administrative agencies are "always subject to properly enacted and valid laws"). In short, the PSC was required to adhere to the statutory directives set forth in W. Va.Code § 11–13B–2(b)(5) and to prepare only an exempt services list to submit to the Tax Commissioner; the PSC was not authorized to additionally decide the year to which its list would apply.

Consequently, we conclude that W. Va. C.S.R. § 110–13B–2.6 is a valid legislative rule that properly supplies that information upon which the Legislature remained silent in its enactment of W. Va.Code § 11–13B–2(b)(5) and, as a result, provides guidance for the application of the statute. Thus, because W. Va.C.S.R. § 110–13B–2.6 specifies that the PSC's exempt services list "shall constitute a conclusive determination for the purpose of defining 'gross income' of a telephone

company or communications carrier for *the next succeeding calendar year,*" we find that the PSC's exempt services list issued on December 23, 2004, applies to define "gross income" for the 2005 calendar year. (Emphasis added). Therefore, we reverse the circuit court's contrary ruling.[7]

### IV.

### CONCLUSION

For the foregoing reasons, the September 14, 2010, order of the Circuit Court of Berkeley County is hereby affirmed, in part, and reversed, in part, and the Office of Tax Appeals' order entered April 23, 2007, is hereby reinstated.

Affirmed, in part, and Reversed, in part.

---

7. Although the effect of this decision is to deny Frontier the $9,359,083.60 refund it has requested, it is our understanding that Frontier already has received the benefit of the PSC's December 23, 2004, exempt services list. During the oral argument of this case, the Tax Commissioner

represented that Frontier used the PSC's December 23, 2004, exempt services list to calculate its tax liability and to reduce its estimated tax payments for the 2005 calendar year, which directly coincides with Frontier's 2005 tax year because Frontier is a calendar-year taxpayer.